UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ROBERT GRUNDSTEIN, | ) | CASE NO. 1:06 CV 2381 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| STATE OF OHIO, <u>et al.</u>, | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On October 2, 2006, pro se plaintiff Robert Grundstein filed this action under the Declaratory Judgment Act, 28 U.S.C. § 2201 against the State of Ohio and Cuyahoga County Common Pleas Court Judge Lillian Greene. In the complaint, plaintiff challenges the constitutionality of Ohio's vexatious litigant statute, OHIO REV. CODE § 2323.52, both on its face and as it is applied to him. He seeks injunctive relief.

### *Background*

Mr. Grundstein states that he is an attorney licensed to practice law in the State of Washington. He currently resides in Vermont. He was declared to be a vexatious litigant, pursuant to Ohio Revised Code § 2323.52, based upon litigation he was pursuing in the Ohio courts as a pro se litigant.

Mr. Grundstein's mother, Dorothy Grundstein, and his sister, Margaret Grundstein,

entered into a contract with Wolf's Fine Art Auctioneers to sell numerous pieces of furniture and artwork on consignment. George Bielert was the manager of Wolf's Fine Art Auctioneers which also conducted business as eWolf's.com, LLC and Wolf's Gallery, Inc. ("Wolf's"). Wolf's sold the Grundsteins' art and furniture at auction for over $7,000.00. Prior to the delivery of the proceeds from the sale, however, Wolf's terminated its business operations, and the Grundsteins did not receive payment for their merchandise.

Dorothy Grundstein and Margaret Grundstein filed suit in 2001 in the Cuyahoga County Court of Common Pleas, Case No. CV-488903, and obtained a default judgment against Wolf's Gallery, Inc. for $ 7,100.00. Apparently unsatisfied with that judgment, Robert Grundstein filed suit on behalf of his mother against Mr. Bielert in Cuyahoga County Court of Common Pleas Case No. CV-483320. The case was dismissed without prejudice because Mr. Grundstein is not licensed to practice law in the State of Ohio. Thereafter, Dorothy Grundstein assigned her rights under the consignment contract to her son and he refiled the case against Mr. Bielert, eWolf's.com, and Wolf's Gallery, Inc., Case No. CV-513849. Mr. Bielert responded with a Motion to Dismiss. The trial court granted Mr. Bielert's Motion, but dismissed the claims against all of the defendants with prejudice. Mr. Grundstein appealed that decision to the Ohio Eighth District Court of Appeals. The Ohio Court of Appeals reversed that decision in part, finding that dismissal of the claims against eWolf's.com and Wolf's Gallery, Inc. was not proper because service had not been perfected on these two defendants. The case was remanded to the Court of Common Pleas solely for consideration of the claims against eWolf's.com and Wolf's Gallery, Inc. The dismissal of the claims against Mr. Bielert, however, was upheld.

Although the claims against Mr. Bielert had been dismissed with prejudice, Mr.

Grundstein continued to litigate the action as though Mr. Bielert were still a party. He filed multiple and repeated motions to amend his complaint to bring Mr. Bielert into the action. When those motions were denied, he filed an amended complaint without leave of court. He filed motions to "pierce the corporate veil," motions for default judgment, and repeated motions to reconsider the denial of the other motions. In response to his motions, the court continued to remind Mr. Grundstein that Mr. Bielert was no longer a party to the case. Undeterred, Mr. Grundstein then initiated a third action against Wolf's Gallery, Inc. in the Cuyahoga County Court of Common Pleas, Case No. 572848. While this action did not directly name Mr. Bielert as a defendant, it also sought to "pierce the corporate veil" to allow Mr. Grundstein to pursue the matter against Mr. Bielert.

Mr. Bielert responded by filing a Motion for sanctions and a motion to have Mr Grundstein declared to be a vexatious litigator. A hearing was scheduled for September 19, 2005. Mr. Bielert was present with his attorney; however, Mr. Grundstein did not attend. At the conclusion of the hearing, Cuyahoga County Common Pleas Court Judge Lillian Greene noted that Mr. Grundstein had "involved himself in behavior exceeding the bounds of zealous advocacy and bordering on harassment and menacing." (Compl. Ex. 2 at 4.) She noted that, although Mr. Grundstein is an attorney who should be familiar with Disciplinary Rules, he repeatedly contacted Mr. Bielert directly instead of through counsel as required by Ohio DR 7-104. The court also noted that Mr. Grundstein made comments implying that he had looked through the windows of Mr. Bielert's residence and left telephone messages for Mr. Bielert's attorney referring to him as the "anti-Christ." (Compl. Ex. 2 at 4.) Mr. Grundstein was declared to be a vexatious litigator and he was ordered to pay attorney fees to Mr. Bielert in the amount of $ 4,949.00. Mr. Grundstein

requested leave to file Writ of Prohibition and Writ of Mandamus actions against Judge Greene claiming she did not have personal jurisdiction to issue her order. He was denied leave to file these actions.

Mr. Grundstein has now filed this action asking this Court to declare Ohio's vexatious litigant statute, OHIO REV. CODE § 2323.52, to be unconstitutional, both on its face and as it applies to him. In support of his facial challenge to the statute, he contends it is a prior restraint on speech because he has to obtain leave of court to file new actions. He asserts that it is overbroad because it does not address the problem of vexatious litigation in the least restrictive manner. Mr. Grundstein offers several other methods of addressing vexatious litigation that he considers to be less restrictive. He claims the statute is vague because the terms "vexatious" and "harass" are not adequately defined and are open to interpretation. He asserts that the statute denies litigants access to the courts and substantive due process. Finally he contends that the statute denies equal protection to pro se litigants.

In support of his assertion that the statute is unconstitutional as it is applied to him, Mr. Grundstein claims that Judge Greene's order prevents him from continuing "an extremely meritorious action" against Wolf's Gallery, Inc. and George Bielert. (Compl. at 7.) He further contends that he "was prevented from arguing a new standard for veil piercing to be applied against LLCs." (Compl. at 7.) He asserts that Judge Greene "personalized the meaning of vexatious" because he promised to appeal if he didn't "win" the civil action against Mr. Bielert and Wolf's Gallery. Finally, he claims that Judge Greene does not review his petitions for leave to file new actions in a timely manner, which could deprive him of the ability to pursue a non-frivolous claim. He asks this Court to grant him injunctive relief to rescind Judge Greene's order and permit him

to file new actions without obtaining leave of court.

### *Analysis*

While pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court may dismiss an action sua sponte if the complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the court of jurisdiction. Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999)(citing Hagans v. Lavine, 415 U.S. 528, 536-37 (1974)). The claims asserted in this action satisfy these criteria.

As an initial matter, federal courts have recognized their own inherent power and constitutional obligation to protect their jurisdiction from conduct which impairs the ability to carry out Article III functions and to prevent litigants from unnecessarily encroaching on judicial machinery needed by others. Procup v. Strickland, 792 F.2d 1069, 1073 (11th Cir. 1986). To achieve these ends, the United States Court of Appeals for the Sixth Circuit has approved enjoining vexatious and harassing litigants by requiring them to obtain leave of court before submitting additional filings. Filipas v. Lemons, 835 F.2d 1145 (6th Cir. 1987); Wrenn v. Vanderbilt Univ. Hosp., Nos. 94-5453, 94-5593, 1995 WL 111480 (6th Cir. Mar. 15, 1995)(authorizing a court to enjoin harassing litigation under its inherent authority and the All Writs Act, 28 U.S.C. § 1651(a)(citations omitted)).[1] The Ohio statute, OHIO REV. CODE § 2323.52, provides the same

---

[1] Other circuits have endorsed enjoining these types of filers. See, Day v. Allstate Ins. Co.,788 F.2d 1110 (5th Cir.1986); Cotner v. Hopkins, 795 F.2d 900 (10th Cir. 1986); Procup v. Strickland, 792 F.2d 1069 (11th Cir. 1986); Franklin v. Murphy, 745 F.2d 1221 (9th Cir. 1984); In re Martin-Trigona, 763 F.2d 140 (2d Cir. 1985); In re Green, 669 F.2d 779 (D.C. Cir. 1981)(per curiam); Green v. Warden, 699 F.2d 364 (7th Cir. 1983), cert. denied, 461 U.S. 960 (1983); Green v. White, 616 F.2d 1054 (8th Cir. 1980) (per curiam); Gordon v. Dep't of Justice, 558 F.2d 618 (1st
(continued...)

remedy to Ohio courts faced with a vexatious or harassing litigant.

## Facial challenge to Ohio Revised Code § 2323.52

Mr. Grundstein contends that Ohio's vexatious litigant statute is unconstitutional on its face because it violates the First and Fourteenth Amendments. Because of the wide-spread effects of striking down a statute on its face at the request of a litigant receiving an unfavorable ruling under its terms, courts have long recognized that this step should be used with hesitation. New York v. Ferber, 458 U.S. 747, 768 (1982). For the reasons set forth below, Mr. Grundstein fails to demonstrate that Ohio's vexatious litigant statute is unconstitutional on its face.

### A. First Amendment

With respect to Mr. Grundstein's claims under the First Amendment, the Court must first determine if the vexatious litigant statute actually encroaches on a right protected by the First Amendment. The United States Supreme Court has recognized that the right to petition for a redress or grievance is a liberty interest safeguarded by the First Amendment rights of freedom of speech and freedom of the press. United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n, 389 U.S. 217, 222 (1967). Although the right to prosecute a meritorious action is encompassed in this liberty interest, the same is not true of suits based on insubstantial claims, or suits that lack a "reasonable basis" in law or fact, which are not within the scope of First Amendment protection. Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 743 (1983). "The First Amendment interests involved in private litigation, such as compensation for violated rights and interests, the psychological benefits of vindication, and public airing of disputed facts,

---

(...continued)
Cir. 1977); Gambocz v. Yelencsics, 468 F.2d 837 (3d Cir. 1972).

are not advanced when the litigation is based on intentional falsehoods or on knowingly frivolous claims." Id. Furthermore, since "sham litigation" by definition does not involve a bona fide grievance, it does not come within the First Amendment right to petition the government. Id. Just as false statements are not immunized by the First Amendment right to freedom of speech, see Herbert v. Lando, 441 U.S. 153, 171 (1979); Gertz v. Robert Welch, Inc., 418 U.S. 323, 340 (1974), vexatious or harassing litigation is not immunized by the First Amendment and can be regulated by the states. Bill Johnson's Restaurants, 461 U.S. at 743.

Ohio's vexatious litigant statute, which restricts filers of harassing and frivolous litigation, does not violate the First Amendment. By its very terms, the statute applies only to litigants who have habitually, persistently and without reasonable grounds engaged in vexatious conduct in a civil action or actions. Vexatious conduct is defined as conduct that obviously serves merely to harass or maliciously injure another party to the civil action, conduct that is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or conduct that is imposed solely for delay. OHIO REV. CODE §2323.52(A)(2)(a)-(c). These actions are not protected by the First Amendment. Furthermore, constitutionally protected speech is not banned by the statute. Even after a person has been declared to be a vexatious litigator, the statute does not preclude that person from filing subsequent lawsuits so long as those suits have merit. OHIO REV. CODE § 2323.52(F). The statute does not act as a prior restraint on speech because it does not regulate conduct protected by the First Amendment.

Moreover, the statute is not unconstitutionally vague. It is a basic principle of due process that a statute is void for vagueness if its prohibitions are not clearly defined. Grayned v.

City of Rockford, 408 U.S. 104, 108 (1972). To survive a challenge on the grounds of vagueness, the statute must give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. Id. The root of the vagueness doctrine is a rough idea of fairness. Id. The terms of the statute must be sufficiently clear that an ordinary person will have fair notice to avoid the prohibited conduct without having to "steer far wider of the unlawful zone...than if the boundaries of the forbidden areas were clearly marked." Id. It is not, however, a principle designed to convert into a constitutional dilemma the practical difficulties in drawing statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. Colten v. Kentucky, 407 U.S. 104, 110 (1972).

A person of reasonable intelligence would not need to guess at the conduct prohibited by Ohio's vexatious litigant statute. The term "vexatious conduct" is specifically defined in the statute and the meaning of crucial words and phrases within that definition are either provided in the statute or can be ascertained fairly by reference to judicial decisions, common law, dictionaries, and the words themselves because they possess a common and generally accepted meaning. The statute also goes beyond providing fair notice of the conduct prohibited, and requires actual notice and hearing before its provisions can be triggered. The vexatious litigant statute is not void for vagueness.

Mr. Grundstein's argument that the statute is unconstitutionally overbroad is also flawed. Even if a statute is sufficiently clear and precise, it may nonetheless be "overbroad" if, in its reach to ban certain activities, it also substantially prohibits constitutionally protected conduct. Grayned, 408 U.S. at 115. Because striking down a statute on its face has long reaching effects,

the overbreadth of a statute must be substantial "not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications, before applying the strong medicine of overbreadth invalidation." Virginia v. Hicks, 539 U.S. 113, 120 (2003). "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 800 (1984). A party challenging a regulation as overbroad, therefore, has the burden "to demonstrate a realistic danger that the [legislation] will significantly compromise recognized First Amendment protections of individuals not before the Court." Id. at 802. Under the traditional test for assessing restrictions on expressive conduct, a regulation will be upheld if (1) it is not aimed at, and does not encompass constitutionally protected speech or activities, and (2) it "furthers an important or substantial government interest." O'Brien v. United States, 391 U.S. 367, 377 (1968).

Mr. Grundstein contends that the statute is overbroad because there are less restrictive means of controlling abusive litigants. That assertion, however, is insufficient to support an overbreadth challenge to the constitutionality of a statute. As set forth above, the vexatious litigant statute is not aimed at constitutionally protected speech and does not place a ban on the filing of meritorious litigation. In fact, the notice and hearing requirement and screening process for filing meritorious claims are in place to ensure that constitutionally protected activities are not prohibited in any way. Moreover, the statute is narrowly tailored to further the state courts' important obligation to protect their jurisdiction from conduct which impairs the ability to carry out their functions and which prevents litigants from unnecessarily encroaching on judicial machinery needed by others. See Procup, 792 F.2d at 1073; Mayer v. Bristow, 91 Ohio St. 3d. 3,

12 (2000). As long as the statute does not affect a substantial amount of protected speech and serves an important government interest, Mr. Grundstein cannot successfully challenge this statute on its face simply because he prefers other methods of addressing the problem.

### B. Substantive Due Process and Equal Protection

Mr. Grundstein then asserts that the statute denies substantive due process and equal protection to pro se litigants. He points out that the statute specifically excludes attorneys who are representing their clients, and notes that the same abuses which the statute seeks to prohibit can be practiced by attorneys with the same damaging effects. He contends that the distinction between pro se litigants and attorneys is arbitrary and capricious and violates the Fourteenth Amendment.

The substantive component of the Due Process Clause imposes certain limitations on governmental deprivations of life, liberty or property, independent of the procedural limitations imposed on such deprivations. See Pearson v. City of Grand Blanc, 961 F.2d 1211, 1216 (6th Cir.1992). To set forth a claim for violations of substantive due process, the plaintiff must allege that the legislation in question is so unreasonable, arbitrary and capricious that it causes a deprivation of a substantive right specified in the Constitution or a federal statute. Mertik v. Blalock, 983 F.2d 1353,1367 (6th Cir. 1993); Parate v. Isibor, 868 F.2d 821, 831 (6th Cir. 1989). Proving a violation of substantive due process requires not only that the challenged state action is arbitrary and capricious, but also that it impedes a constitutionally protected property or liberty interest. Silver v. Franklin Township Bd. of Zoning Appeals, 966 F.2d 1031, 1036 (6th Cir.1992). In the absence of a constitutionally protected interest, arbitrary and capricious conduct will not support a substantive due process claim. See id.

Ohio's vexatious litigant statute does not arbitrarily and capriciously deprive citizens

-10-

of a constitutionally protected liberty or property interest. As stated above, filing frivolous and harassing lawsuits is not implicit in the concept of ordered liberty, and therefore the statute does not deprive individuals of a constitutionally protected right. Bill Johnson's Restaurants, 461 U.S. at 743. Moreover, the statute is rationally related to legitimate ends and thus not "arbitrary." See Regents Of University of Michigan v. Ewing, 474 U.S. 214, 227 (1985)(dismissal of student from medical program did not violate Due Process Clause as arbitrary). The vexatious litigant statute was enacted to prevent individuals who demonstrate a pattern of abusing the legal system from consuming judicial resources needed by others for the vindication of legitimate rights, using the court system to intimidate others, or filing lawsuits merely to cause emotional or financial devastation of their targets. Mayer, 91 Ohio St. 3d at 13; see Procup, 792 F.2d at 1073. "Such conduct, which employs court processes as amusement or a weapon in itself, undermines the people's faith in the legal system, threatens integrity of the judiciary, and casts a shadow upon the administration of justice. Thus, the people...have a legitimate, indeed compelling, interest in curbing the illegitimate activities of vexatious litigators." Mayer, 91 Ohio St. 3d at 13. That interest is narrowly tailored to address only the conduct which it seeks to prohibit by providing for a pre-declaration hearing and a mechanism by which even vexatious litigants can file meritorious actions. Id. There is no indication that this statute violates the Due Process Clause.

Similarly, there is no basis for finding that the statute denies pro se litigants equal protection of the law. In making an equal protection challenge, the plaintiff must demonstrate that a discrimination of some substance has occurred which has not occurred against other individuals who were similarly situated. City of Cleburne,Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Clements v. Flashing, 457 U.S. 957, 967 (1982). Mr. Grundstein contends that pro se

litigants and attorneys are similarly situated because they are both capable of bad behavior during litigation. There are, however, important distinctions between these two groups. Attorneys, who are schooled in the law, are hired to represent the interests of third parties and presumably are not personally connected to the litigation. When they do not conform to professional standards, attorneys are subject to sanctions for frivolous filings under Ohio Revised Code § 2323.51 and Ohio Civil Procedure Rule 11. Attorneys may be sued for malpractice by their clients, and may be subject to disciplinary action for violation of the Ohio Disciplinary Rules which could result in suspension or expulsion from the practice of law. See Mayer, 91 Ohio St. 3d at 13. Pro se litigants are not governed by these same constraints.

Even if disparate treatment has occurred, the Equal Protection Clause is not necessarily violated by the classification. Merely treating two groups differently does not violate the Fourteenth Amendment. Rawls v. Sundquist, No. 96-5931, 1997 WL 211289, at *1 (6th Cir. Apr. 28, 1997). Legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. City of Cleburne,Texas, 473 U.S. at 439. The court will depart from these principles only when the statute places burdens upon a "suspect class" of persons or on a constitutional right that is deemed to be "fundamental." Id. Pro se litigants are not a suspect class and there is no fundamental right under the constitution to file frivolous lawsuits. See Bill Johnson's Restaurants, 461 U.S. at 743. The statute therefore will be upheld if it bears a rational relationship to a legitimate state interest. City of Cleburne,Texas, 473 U.S. at 439. The analysis for equal protection rationality is the same as the analysis under substantive due process review. See Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 470 n. 12 (1981); Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 124-25 (1978). Based on the

Court's analysis of the substantive due process claim, the Court shall for the same reasons reject the plaintiff's equal protection argument.

### Challenge to Ohio Revised Code § 2323.52 as Applied to Plaintiff

Mr. Grundstein also challenges the vexatious litigant statute as it is applied to him. He claims that Judge Greene's order prevents him from continuing "an extremely meritorious action against Wolf's Gallery, Inc whose principal, George Bielert and silent investor, Dominic Visconsi, have accepted benefits from unfair advantage used against those made vulnerable by a recent death." (Compl. at 7.) He further contends that he "was prevented from arguing a new standard for veil piercing to be applied against LLCs." (Compl. at 7.) He asserts that Judge Greene "personalized the meaning of vexatious" because he promised to appeal if he didn't "win" the civil action against Mr. Bielert and Wolf's Gallery. Finally, he claims that Judge Greene does not review his petitions for leave to file new actions in a timely manner. He suggests that this could deprive him of the ability to pursue a non-frivolous claim in the future.

United States District Courts do not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n. 16 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. Id. Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights. Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994). Federal jurisdiction

cannot be invoked merely by couching the claims in terms of a civil rights action. Lavrack v. City of Oak Park, No. 98-1142, 1999 WL 801562 at *2 (6th Cir. Sept. 28, 1999); see also, Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir.1992).

The United States Sixth Circuit Court of Appeals has applied two elements to a Rooker-Feldman analysis. First, in order for the Rooker-Feldman doctrine to apply to a claim presented in federal district court, the issue before the court must be inextricably intertwined with the claim asserted in the state court proceeding. Catz v. Chalker, 142 F.3d 279, 293 (6th Cir. 1998); see Tropf v. Fidelity National Title Insurance Co., 289 F.3d 929, 937 (6th Cir. 2002). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." Catz, 142 F.3d at 293. Second, the Rooker-Feldman doctrine precludes a district court's jurisdiction where the claim is a specific grievance that the law was invalidly or unconstitutionally applied in plaintiff's particular case as opposed to a general constitutional challenge to the state law applied in the state action. Id.; Tropf, 289 F.3d at 937.

While Mr. Grundstein's facial challenge to the vexatious litigant statute may arguably be unaffected by the Rooker-Feldman doctrine, his claims regarding the application of this statute to him are barred. His assertions clearly attack Judge Greene's decision to declare him to be a vexatious litigant. He states that the order against him is "personal," and contends that it impedes him from continuing to pursue his claims against Mr. Bielert which he contends are "extremely meritorious." (Compl. at 7.) He also challenges the timeliness with which Judge Greene issues her orders granting or denying leave to file new documents or legal actions. All of the allegations concern specific grievances that the law was and continues to be incorrectly applied

to plaintiff's case. Moreover, plaintiff requests as relief that the state judgment be declared unconstitutional and its execution enjoined. Any review of the constitutional claims asserted in this context would require this Court to review the specific issues addressed in the state court proceedings against him. This Court lacks subject matter jurisdiction to conduct such a review or grant the relief as requested. Feldman, 460 U.S. at 483-84 n. 16; Catz, 142 F.3d at 293.

### *Conclusion*

Accordingly, this action is dismissed. The Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
UNITED STATES DISTRICT JUDGE

Dated: 12/5/06

---

[2] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.